White, J.
The decree rendered on the supplemental bill, which was appealed from by certain of the creditors, did not affect the decrees rendered in favor of McBride, Sheldon & Co. and Springer & Whiteman, setting aside the fraudulent conveyance and ordering the property to be sold. The object of the supplemental bill was to marshal the liens of the respective parties with a view to the distribution after the sale of the property under the other decrees. The last-named decrees remained in full force, and their execution, therefore, was not affected by the appeal.
It is, however, contended that after the death of Mrs. Beaumont, the grantee in the fraudulent conveyance, a sale of the property could not be made under these decrees until they were revived against -her heirs.
This claim arises out of a misapprehension of the relation in which the parties stood to the property.
As respects the judgment creditors and their right to have the property sold, and the proceeds subjected to the payment of their judgments, the title was in the fraudulent grantor. On the sale being made, the surplus of the proceeds, if any, after satisfying the creditors, belonged, of course, to the grantee or those claiming under her; but for the purpose of enforcing and obtaining satisfaction of the decrees, the property was still the judgment debtor’s.The purchaser at the sale under the decrees does not claim through or under the fraudulent grantee, but connects his title with that held by the debtor before the fraudulent conveyance was made. As between the purchaser and the heirs of such grantee, the parties stand in the same relation to the property as they would have stood if the fraudulent conveyance had never been made.
*456 If the sale had been made under an execution issued on a judgment against the husband, or on a decree against him in a suit to which his wife was not a party, she would have no right to a resale of the property. A decree, in a suit between'her and the purchaser, that the conveyance to her was fraudulent, would effectually cut off all claim on her part to an interest in the purchased property. Sockman v. Sockman, 18 Ohio, 362.
As this would be the effect of a decree between her and the purchaser, a like decree between her and the judgment creditor, before the sale, has the same effect. -The only difference in the two cases is, that in the one case the property would be sold subject to the cloud on it caused by the fraudulent conveyance, and in the other case the cloud would be removed before the sale. And a decree finding the conveyance fraudulent, which binds her, will bind her heirs.
The property was not sold as the property of Mrs. Beaumont, but as that of her husband, who was a party to the decrees ordering the sale, and was living, at the time they were carried into execution. It seems to us the failure to revive the decrees against the heirs of Mrs. Beaumont, does not affect the title acquired by the purchaser at the sale made under the decrees.
There is no claim in the case that the judgments or decrees were paid, or otherwise satisfied, after they,, were rendered. Hence all discussion as to the effect of .such payment is irrelevant.
2. It is also claimed the decrees became dormant, under section 422 of the code, before the issuing of the last orders of sale, and that for this reason the sale is invalid.
All judicial sales in this state require confirmation by the court before they can be completed. Without conceding, therefore, that under our system, such sales can be impeached, on the ground of the dormancy of the judgment, otherwise than by a proceeding in error to reverse the order of confirmation, it is sufficient to say, in answer to the present obj ection, that we are satisfied the section of the coda *457 referred to, has no application to decrees for the sale of specific real property.
The section provides, that if execution shall not be sued out within five years from the date of a judgment, or if five years shall intervene between the date of the last execution and the suing out of another writ of execution, the judgment shall become dormant, and cease to operate as a lien on the estate of the judgment debtor. This section has sole reference to judgments for money which are to be enforced by the writ of execution. The succeeding section prescribes what a writ of execution shall contain, and shows that it is wholly inapplicable to the enforcement of decrees in equity for the sale of specific property. The suits in which such decrees were rendered, remained on the docket, and were continued from term to term, for the purpose of their execution, until the amendment of section 806 of the code, which directs the clerk to leave such cases off the docket where nothing remains to he done except to execute an order of sale, and distribute the proceeds as directed in the order. That amendment does not alter the effect of such decrees, though, under it, the suits in which they are rendered may be left off the docket.
3. The next question arises on the alleged error of the court in refusing to allow the plaintiffs to dismiss the suit without prejudice.
We see no error in this refusal of the court. The submission of the ease on the demurrer was a final submission of the case within the meaning of section>372 of the code, unless leave was obtained to reply or amend. Without additional pleading, the legal consequence of the overruling of the demurrer was a judgment of dismissal.
4. The remaining question is, whether there was error in i efusing leave to reply, or amend the petition.
The case had been taken by appeal to the District Court. In addition to what is found in the code on the subject of amendments, the statute provides, in regard to the trial of cases coming into that court by appeal, that they shall be tried on the pleadings made up in the court below, unless, *458 for good cause shown, the “ said court” shall permit an alteration of the pleadings. There is a manifest propriety in requiring greater strictness in regard to amendments in that court than in the court of original jurisdiction.
. The reply which it was proposed to file, could not substantially have varied the case, the controlling facts being matter of record not controverted.
The whole subject, however, rested in the sound discretion of the court. If the exereise'of such discretion is reviewable on error in any case, it can only be where the record shows, in view of all the facts and circumstances under which the court acted, an abuse of discretion, resulting in the denial to the party of a fair trial.
In regard to the present record, it is sufficient to say it does not make such a case.

Leave refused.

Day, O. J., McIlvaine, Welch, and Rex, JJ., concurring.